Cecil A. COOK, Plaintiff,

v.

J.D. LEHMAN, Commissioner, Donald T. Vaughn, Superintendent, Captain Robert C. Williams, Lieutenant Thomas J. Dohman and Judy Kleiman, Examiner, Defendants.

Civ. A. No. 90–4710.

United States District Court,
E.D. Pennsylvania.

July 28, 1994.

208

Angus R. Love, Institutional Law Project, Philadelphia, PA, Peter J. Black, James B. Ball, Andrew J. Shubin, Keystone Legal Services, Inc., State College, PA, for Cecil A. Cook.

Cecil A. Cook, pro se.

Mary Elizabeth Butler, John O.J. Shellenberger, III, Office of Atty. Gen., Philadelphia, PA, for J.D. Lehman, Donald T. Vaughn.

John O.J. Shellenberger, III, Office of Atty. Gen., Philadelphia, PA, for Capt. of Guards Williams, M. Barone, T. Dohman, Judy Kleiman.

## OPINION

GAWTHROP, District Judge.

In this civil rights case, brought pursuant to 42 U.S.C. §§ 1983 and 1985, a prisoner claims defendants punished him in retaliation for the part he played in protesting the quality of medical care at the State Correctional Institution at Graterford. The jury believed him, returned a verdict in his favor against all defendants, and awarded $13,600 in damages for violations of his due process and first amendment rights. Defendants are seeking judgment as a matter of law, or in the alternative, a new trial.[1] I shall grant

1. Defendants have also asked me to amend the judgment to clarify that it is not entered against either Donald T. Vaughn or Joseph Lehman. Because the jury's verdict does not support any

judgment as a matter of law in favor of all the defendants.

■ Judgment as a matter of law may be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for [a] party," Fed.R.Civ.P. 50(a), since "the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Denneny v. Siegel,* 407 F.2d 433, 439 (3rd Cir.1969). All evidence and justifiable inferences must be drawn in favor of the prevailing party. *In re Air Crash Disaster at Mannheim Germany,* 769 F.2d 115, 123 (3rd Cir.1985). As such, I am not free to weigh the evidence, pass on the credibility of witnesses, or substitute my judgment for that of the jury. *Aloe Coal Co. v. Clark Equipment Co.,* 816 F.2d 110, 113 (3rd Cir.1987). However, a jury "may not be permitted to reach its verdict on the basis of speculation and conjecture." *Denneny,* 407 F.2d at 440. At trial, the plaintiff must be able to produce substantial evidence of sufficient facts upon which the jury may reach a logical conclusion. *Id.*

The facts in this case are as follows. On July 16, 1989, plaintiff led a group of inmates to the correctional institution's central command post to demand that medical treatment be given to two sick friends. A report on the incident prepared by Correctional Officers Dohman and Williams described the gathering as peaceful. Although the report did not mention plaintiff by name, and no disciplinary action resulted from that incident, plaintiff testified at trial that both Dohman and Williams threatened him with retaliation, and followed through on that threat with a series of disciplinary actions: On September 10, 1989, Dohman, with William's approval, locked plaintiff down in his cell following a prison brawl. The next month, after another disturbance, Dohman and Williams removed Cook from the general prison population and placed him in restrictive housing. No formal disciplinary action resulted from either of

these incidents. On December 18, 1989, however, Correctional Officer Lieutenant Barone, filed a misconduct report against plaintiff, charging him with planning and soliciting a prison riot which was to occur on Thanksgiving Day.

At the hearing on these charges, Lt. Barone was the only witness. He did not have personal knowledge of the alleged misconduct, but he testified that he had been told about the planned riot by a Pennsylvania police officer who had heard about it from a confidential informant. Neither Hearing Examiner Kleiman, nor Lieutenant Barone spoke either to the police officer or to the confidential informant.

Ms. Kleiman reported that out of the presence of the plaintiff, she conducted an in camera independent assessment of the informant's reliability and credibility at which Lt. Barone, and no one else, testified. After reopening the hearing to Mr. Cook, she found the plaintiff guilty as charged and sentenced him to 90 days in solitary confinement.

Plaintiff filed suit against Williams, Dohman, Barone, and Kleiman. The jury found that Williams, Dohman, and Barone unconstitutionally punished plaintiff by retaliating against him for exercising his first amendment rights, and that Kleiman violated his due process rights in the manner in which she conducted the hearing. I begin with the due process issue and the jury finding of liability against Ms. Kleiman.

■ The level of process due varies and is a flexible concept determined by the situation. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The defendants argue that, as a matter of law, Ms. Kleiman did not deprive Mr. Cook of those limited procedural rights afforded inmates facing disciplinary proceedings. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[2] The Supreme Court,

---

judgment against Donald Vaughn, and because I granted summary judgment in favor of Joseph Lehman, I shall, of course, grant that request.

2. *Wolff* requires:
   [T]hat inmates facing disciplinary charges for misconduct be accorded 24 hours' advance

written notice of the charges against them; a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; the aid of a staff member or inmate in presenting a defense, provided the inmate is

however, has yet to rule on the manner or need by which a disciplinary hearing examiner must determine the credibility of a concealed informant. This tribunal thus examines the Third Circuit case which directly addressed the question of what quality of evidence is required for a finding of guilt at institutional disciplinary proceedings in cases involving confidential informants. *Helms v. Hewitt,* 655 F.2d 487, 502 (3d Cir.1981), *rev'd on other grounds,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In *Helms,* this Circuit explicitly adopted the procedures set out in *Gomes v. Travisono,* 510 F.2d 537 (1st Cir.1974):

> (1) [T]he record must contain some underlying factual information from which the [tribunal] can reasonably conclude that the informant was credible or his information reliable; (2) the record must contain the informant's statement [written or as reported] in language that is factual rather than conclusionary and must establish by its specificity that the informant spoke with personal knowledge of the matters contained in such statement.

*Helms,* 655 F.2d at 502, citing *Gomes,* 510 F.2d at 540. As the jury was charged, these two requirements must be met in order to satisfy the demands of due process.

The defendants, in arguing this post-trial motion, focus only on the question of whether there was "some evidence in the record" to support the decision of the hearing examiner, Ms. Kleiman. *Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 457, 105 S.Ct. 2768, 2775, 86 L.Ed.2d 356 (1985). They claim that this test, which seeks to strike a balance between the state's interest in maintaining a secure institution and conducting an effective and controlled disciplinary hearing which affords inmates the necessary procedural safeguards, *Wolff,* 418 U.S. at 561–62, 94 S.Ct. at 2977–78, is the only test which must be met. The "some evidence" standard, however, only determines the amount of evidence required; it does not address the quality of that evidence. The

quantum of evidence is thus relevant, but is not, by itself, determinant.

The defendants also assert that *Helms* is no longer good law, having been superseded and overruled *sub silentio* by *Hill.* Despite this assertion, I find that *Hill,* which does not concern the reliability of concealed informants, does not undermine *Helms* since the cases address different aspects of the adjudicatory process. Instead, the requirements adopted by the Third Circuit in *Helms* can be reconciled with, and used in conjunction with the Supreme Court's "some evidence" standard. Taken together, the cases establish (1) the minimum quantum of evidence required to uphold a disciplinary proceeding's finding of guilt, and (2) the quality of evidence—the credibility and reliability of confidential sources—which must be present at such a hearing.

The fact that the Third Circuit decided *Helms* four years before the Supreme Court heard *Hill,* and thus could not consider it as guidance, may have more attenuating effect had not this Circuit reaffirmed its position in *Helms* two years after *Hill* was handed down. *Henderson v. Carlson,* 812 F.2d 874, 879 (3rd Cir.1987), *cert. denied,* 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987).

█ The difficulty with this case, this verdict, is that by finding against Ms. Kleiman, the jury must have believed that she did not have sufficient evidence of informant credibility upon which to base her decision. This court, however, finds that there is inescapable evidence in the record that the informants were reliable and spoke with personal knowledge and factual specificity. *Helms,* 655 F.2d at 502. Specifically, Ms. Kleiman had before her information about the plaintiff's soliciting other inmates about the riot and the time, place, and manner in which it was to occur. Exhibit p–14. Lt. Barone also told Ms. Kleiman that the informant had provided reliable information in the past for a murder trial and a drug bust. Additionally, after the plaintiff was taken out of the general population and placed in administrative custody, Lt. Barone stated that several

illiterate or the issues complex; an impartial tribunal; and a written statement of reasons relied on by the tribunal.

*Hewitt v. Helms,* 459 U.S. 460, 466, n. 3, 103 S.Ct. 864, 466 n. 3, 74 L.Ed.2d 675 (1983).

other inmates provided corroborating evidence by stating that it was a good move to lock up the plaintiff. N.T. II, 128, 9. These facts clearly indicate that there was some evidence of sufficient quantity and quality upon which Ms. Kleiman could constitutionally base her decision. Her findings were neither without support or arbitrary. *Hill,* 472 U.S. at 457, 105 S.Ct. at 2775.

Although the procedural, as well as personal, significance of this decision is great, and the court acknowledges and approves of the rarity in which a jury verdict is overturned, it is the duty of the court so to do when the facts and the law so require. I do not attempt to speculate about how the jury reached it decision,[3] but only note that it was not its job to perform its own hearing and reach its own conclusions. Nor was the jury to independently question the credibility of the concealed informants or the witness, Lt. Barone. *Hill* 472 U.S. at 455, 105 S.Ct. at 2774. The jury was only to determine whether Ms. Kleiman had the required amount and quality of evidence before her. With the standards established in both *Hill* and *Helms* clear and controlling, this court, as a matter of law, can only find that the evidence before Ms. Kleiman clearly satisfied the legal standards and the verdict against her shall be overturned.

The jury also found that defendants Barone, Williams, and Dohman had violated the plaintiff's due process and first amendment rights by (1) causing him to be unconstitutionally disciplined, and (2) retaliating against him for engaging in expressive activity. I will address these issues in turn.

■ First, in dealing with the jury's finding that plaintiff's due process rights were violated, I look to the wording of 42 U.S.C. § 1983, which premises recovery on a showing that the defendant subjected or "cause[d] to be subjected" the defendant to a deprivation of a constitutional right. In this case, the violation was the alleged failure of a hearing examiner to independently assess the credibility and reliability of a confidential informant. Plaintiff does not allege, nor is there any evidence or testimony to suggest, that defendants Dohman and Williams were involved in the investigation that led to the filing of the misconduct charges or the misconduct hearing itself. Further, no facts were brought to light at trial to support a finding that they caused the alleged deprivation. In addition, having concluded that there was no deprivation of due process, Dohman and Williams may not be liable for that which did not occur.

■ Nor did Lt. Barone cause Mr. Cook to be deprived of due process. At trial, Ms. Kleiman stated that she did not accept his testimony without question; indeed she weighed it against that given by the plaintiff before reaching a decision. Her independent judgment on the matter, in effect, broke the causal chain between Barone and the discipline she imposed upon Cook. *See, e.g. Baker v. Lyles,* 904 F.2d 925, 929 (4th Cir.1990); *Hanrahan v. Lane,* 747 F.2d 1137, 1140–41 (7th Cir.1984); *Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986).

■ Defendants argue that I must grant judgment as a matter of law on the first amendment verdict as well. The jury found that the defendants retaliated against Mr. Cook because he engaged in expressive activity protected by the first amendment. I shall address this issue without dealing with the yet-to-be decided question of whether a prison protest is expressive activity protected by the first amendment.

■ Because the scrutiny to which I must subject the decisions of prison officers which infringe upon first amendment rights is less rigorous behind prison walls than on the outside, I find that the decisions to place Mr. Cook in restrictive housing was appropriate. Although the clanging of the prison gates does not form a barrier separating prison inmates from the protections of the constitution, incarceration brings with it a necessary curtailment of constitutional rights. *Pell v.*

---

**3.** I do observe that the plaintiff made an emotionally compelling witness, with the account of his bravely bearing in his arms his invalid fellow inmate to the prison infirmary, to beneficially plead for some healing succor. It was a scenario, I say not critically, to tug at a juror's heartstrings.

**212**

*Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974).

Contained within a prison's walls are people whom society has determined need to be segregated from the citizenry at large. The crimes they have committed often involve violence. The concentration of such people in one institution brings with it the ever-present possibility of confrontation and conflict. *Wolff,* 418 U.S. at 561–62, 94 S.Ct. at 2977–78. Accordingly, the Supreme Court will defer to those decisions of prison officials which, while aimed at protecting internal security, order, and official authority within the prison, also affect protected first amendment rights, so long as those decisions are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989), *citing, Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).

In this case, every time the plaintiff was placed in restrictive confinement, it was in response to some present or threatened prison disturbance. There was, therefore, a danger that security in the jail could be compromised. "Responsible prison officials must be permitted to take reasonable steps to forestall such a threat[.] [Their] informed discretion ... that there is potential danger may be sufficient for limiting [prisoner's first amendment] rights." *Jones v. North Carolina Prisoners' Labor Union Inc.,* 433 U.S. 119, 132–33 n. 9, 97 S.Ct. 2532, 2541 n. 9, 53 L.Ed.2d 629 (1977).

In this instance, I defer to the sound discretion of the correctional officers. They had reason aplenty to believe that Cook might be a threat to prison order and security. He had spearheaded a successful protest against medical care in the prison which could have led prison officials to fear that he had achieved leadership status among the inmates. That his underlying motive may have been beneficent is ultimately not the point here. The point is that the prison officials have a highly proper concern that the prison arena not disrupt into riot, a situation known to cause mayhem and death.

Under the circumstances, the courts may not second-guess the informed decision of correctional officers whose legitimate concern was that plaintiff was set on a course that would foster trouble. Because I find that defendants' actions were reasonable in the light of legitimate penological interests, I shall grant judgment as a matter of law in favor of all defendants on the first amendment verdict.

An order follows.

### ORDER

AND NOW, this 27th day of July, 1994, it is ORDERED that:

(1) Defendant's Motion for Judgment as a Matter of Law is GRANTED.

(2) Accordingly, Defendant's Motion for a New Trial is DENIED as MOOT.

(3) The court's order of March 24, 1993, entering Judgment against the defendants is amended to reflect the fact that the jury verdict did not support a judgment against Donald Vaughn, and that summary judgment was granted in favor of Joseph Lehman.