PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1832
_____

JANINE M. ORIE,
                    Appellant

v.

DISTRICT ATTORNEY ALLEGHENY COUNTY;
FRANK J. SCHERER
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-cv-0233)
District Judge:  Hon. Mark R. Hornak
_____

ARGUED
June 5, 2019

Before:  JORDAN, BIBAS, and MATEY, *Circuit Judges.*

(Filed: November 6, 2019)
_____

James E. DePasquale  [ARGUED]
310 Grant Street – Ste. 1302
Pittsburgh, PA   15219
    *Counsel for Appellant*

Ronald M. Wabby, Jr.  [ARGUED]
Office of the District Attorney of Allegheny County
436 Grant Street
Pittsburgh, PA   15219
    *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

In this case, Janine M. Orie asks us to excuse her failure to object to a Magistrate Judge's Report & Recommendation ("R&R").  The R&R was ultimately adopted by the District Court and prompted the dismissal of her petition for a writ of habeas corpus.  Specifically, Janine[1] urges us to conclude that the District Court should have granted her motion under Federal Rule of Civil Procedure 60(b)(1) to allow her to file objections to the R&R because her earlier neglect was excusable.  She further asks us to hold that the proper standard of review of the R&R is de novo because the District Court reviewed it de novo.  Of course, she also asserts that the R&R

_____

[1] Since this case involves discussion of three sisters with the name Orie, we use their first names for ease of reference, intending neither disrespect nor any indication of familiarity.

reached the wrong conclusion.  We think otherwise and will affirm.

## I.    BACKGROUND[2]

Janine worked as a secretary in the judicial chambers of her sister Joan Orie Melvin, who, during the period relevant here, was a judge on the Superior Court of Pennsylvania.  In April 2010, Janine was charged with a variety of crimes "based upon allegations that she conspired with another of her sisters, then State Senator Jane Clare Orie …, to divert the services of Jane['s] … legislative staff for the benefit of [Joan's] 2009 political campaign for a seat as a Justice on the Supreme Court of Pennsylvania" (the "2010 charges").  (App. at 328.)  The 2010 charges resulted in a trial, which ended in a mistrial.

In 2011, before Janine was retried on the 2010 charges, prosecutors filed new charges against her (the "2011 charges").  The 2011 charges alleged another series of crimes, this time relating to activities in Joan's judicial chambers during the 2009 political campaign for the Supreme Court and a 2003 campaign for that same office.

Janine later faced in a single trial both the 2010 and 2011 charges.  She was found guilty.[3]  On the 2010 charges,

---

[2] We draw on the Superior Court of Pennsylvania's description of the relevant events for background facts that are not in dispute.

[3] On the 2010 charges, Janine was convicted of theft of services and conspiracy to commit theft of services.  On the 2011 charges, she was convicted of theft of services,

3

she was sentenced to "[a] determination of guilty without further penalty" for all counts of conviction. (App. at 182.) On the 2011 charges, she was sentenced to one year "in a county intermediate punishment program" for some counts and to one year of probation for other counts. (App. at 181.)[4]

She appealed, and her convictions and sentences were generally affirmed.[5] She then filed a petition for a writ of habeas corpus in the District Court, arguing that her retrial on the 2010 charges should have been barred by the Double Jeopardy Clause of the Constitution. The case was referred to a Magistrate Judge, who wrote the R&R now in question, recommending dismissal of the petition. The R&R concluded that Janine was not "in custody" for purposes of establishing habeas jurisdiction because she challenged only the

---

misapplication of entrusted property, tampering with or fabricating evidence, and solicitation to tamper with or fabricate physical evidence.

[4] Janine was also ordered to pay restitution to the Pennsylvania Senate and to the Commonwealth on behalf of the Superior Court. At sentencing, "the trial court purported to impose an additional condition on [Janine], namely that she write letters of apology[,]" including to the members of Jane's legislative staff who were affected by the 2010 crimes, but that condition was not in the written sentencing orders. (App. at 331.)

[5] The Superior Court decided, however, that Janine did not have to write the apology letters because that requirement was not included in the written sentencing orders.

4

convictions on the 2010 charges but had received no penalty for them.

Although the R&R advised the parties that they had 14 days to file any objections, no objections were filed, and the District Court adopted the R&R. The Court's order said, in relevant part:

> AND NOW, this 30th day of June, 2016, after the petitioner, Janine M. Orie, filed a petition for a writ of habeas corpus, and after a Report and Recommendation was filed by the United States Magistrate Judge granting the parties a period of time after being served with a copy to file written objections thereto, and no objections having been filed, and upon independent review of the petition and the record and upon consideration of the Magistrate Judge's Report and Recommendation, which is adopted as the opinion of this Court,
>
> IT IS ORDERED that the petition for a writ of habeas corpus filed by petitioner is dismissed[.]

(App. at 23 (citations omitted).)

About two weeks later, however, Janine filed a motion pursuant to Rule 60(b)(1) on the ground that there had been a communications mix-up that prevented her lawyer from filing objections.[6] The lawyer provided an explanation, saying he

---

[6] Rule 60(b)(1) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for … mistake,

5

had given the R&R to his legal assistant, assuming that the assistant would send the R&R to Janine and that Janine would inform him if she wanted to file objections. The legal assistant did not forward the R&R, however, and the lawyer never followed up with Janine. Janine learned of the District Court's dismissal of her habeas petition by reading about it in the news. She then immediately contacted her lawyer "to ask if objections and a motion for reconsideration could be filed." (App. at 25.) Objections to the R&R were attached to the Rule 60(b)(1) motion and filed with the Court.

The District Court denied the motion. It decided that Janine did not meet the standard for Rule 60(b)(1) relief and that, in any event, her objections failed on the merits. This timely appeal followed. We granted a certificate of appealability as to whether the District Court erred in denying relief under Rule 60(b) and in dismissing the petition for lack of jurisdiction. We also directed the parties to address how Janine's failure to timely object to the R&R might affect our standard of review.

## II.    DISCUSSION[7]

Janine makes three arguments on appeal. First, she insists that she qualifies for Rule 60(b)(1) relief. Second, she

---

inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1).

[7] As explained herein, the District Court lacked habeas jurisdiction. But, the Court possessed jurisdiction over the Rule 60(b)(1) motion because "a federal court always has jurisdiction to determine its jurisdiction." *Zambelli Fireworks*

asserts that we should review the R&R de novo. Third and finally, she argues that the District Court erred in dismissing her petition for lack of jurisdiction because she was "in custody." We disagree on each point.

### A.     The Petitioner Is Not Entitled to Rule 60(b)(1) Relief

The first issue is whether the District Court should have granted Janine's Rule 60(b)(1) motion. Under Rule 60(b)(1), courts may "grant a party relief from a final judgment based upon, *inter alia*, 'excusable neglect.'" *Nara v. Frank*, 488 F.3d 187, 193 (3d Cir. 2007) (quoting Fed. R. Civ. P. 60(b)(1)). "The test for 'excusable neglect' is equitable, and requires us to weigh the 'totality of the circumstances.'" *Id.* at 193-94 (citation omitted). Courts are to consider the following factors: "1) the danger of prejudice to the other party; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay—and whether it was within the movant's control; and 4) whether the movant acted in good faith." *Id.* at 194. We review a Rule 60(b)(1) decision for abuse of discretion. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008).

Janine argues that there is excusable neglect here because her "counsel, a sole practitioner, prepared and filed the Motion for Reconsideration and simultaneously filed Objections to the R&R within 13 days of his communication with [her] after she read about the dismissal in the newspapers." (Opening Br. at 19.) She says that her counsel

---

*Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). We have jurisdiction under 28 U.S.C. §§ 2253 and 1291.

filed the motion and objections within what would have been the allowable period for filing objections had he started working on them immediately after the R&R issued, and that he did so in order "to mitigate the late filing and notify the District Court that [she] had a meritorious basis for objecting[.]" (Reply Br. at 2.) Janine further asserts that "[t]he failure to file timely objections did not prejudice the Commonwealth; it had no impact on the efficient administration of justice; and there was no bad faith on the part of [herself] or counsel."[8] (Opening Br. at 18.)

Janine's arguments fail in light of a clear statutory directive and our decision in *Nara v. Frank*. The governing habeas statute, 28 U.S.C. § 2254, states plainly that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Thus, motions under Rule 60(b) that seek relief based on "incompetent and ineffective representation" during a proceeding under § 2254 are barred. *Post v. Bradshaw*, 422 F.3d 419, 423 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(i)). Though couched in terms of excusable neglect, Janine's plea that we ignore her attorney's (and hence her) failure to timely respond to the R&R is exactly the kind of relief foreclosed by the statute itself.

---

[8] Janine additionally suggests that she was prejudiced because she did not consent to the Magistrate Judge presiding over her case. But the District Court here simply referred the case to the Magistrate Judge for an R&R. Consent was not required. *Compare* 28 U.S.C. § 636(b) *with id.* § 636(c).

Even if, however, the clarity of that statute left room to wonder whether Rule 60(b)(1) relief could be appropriate here, our decision in *Nara* tells us it is not. There, a magistrate judge wrote an R&R recommending that habeas relief be granted and warning of the deadline for objecting. *Nara*, 488 F.3d at 193. Neither side objected, so the district court adopted the R&R. *Id.* "Over two weeks" after the district court did so and over six weeks after the R&R was issued, the Commonwealth sought Rule 60(b)(1) relief on the ground that "it never received the R & R[.]" *Id.* at 193-94. We held that, despite "no evidence the Commonwealth acted in bad faith[,]" its "overall negligence in handling the matter preclude[d] us from finding 'excusable neglect.'" *Id.* at 194. We noted that the Commonwealth attorneys were served with the R&R by first-class mail; that they would have received electronic notification of and access to the R&R if they had complied with a standing order to register for the court's electronic case management system; and that "the Commonwealth failed to respond to the *District Court's* order for 17 days[,]" without excuse, notwithstanding the "urgency" of its predicament. *Id.* (emphasis in original).

The neglect manifest here is, if anything, less forgivable than that in *Nara*.[9]  In all, Janine's counsel waited more than

---

[9] Janine suggests that, in *Nara*, there was prejudice to the petitioner and "[t]ime was of the essence[.]" (Reply Br. at 5.)  But while we recognized that prejudice is a factor in deciding a Rule 60(b)(1) motion, we did not otherwise discuss prejudice or apply it to the facts of that case. *Nara*, 488 F.3d at 194.  And, although we referred to "the urgency of the situation," that language related to the Commonwealth's failure to respond to the decisions against it. *Id.* at 193-94.

9

seven weeks to respond to the R&R. He knew an R&R had been issued recommending dismissal, but he simply "assum[ed]" that his legal assistant would send the R&R to Janine "and that [Janine] would contact [him] if [she] wished to file objections." (App. at 24.) He "never attempted to contact [Janine] directly" to make sure that she had no interest in contesting the R&R and, instead, allowed the window for filing objections to close. (App. at 24.) Furthermore, he only took action after Janine learned of the District Court's dismissal of her case in the news. Even then, he did not file anything with the Court for almost two weeks. The unhappy consequence of those facts is that the "overall negligence in handling the matter precludes us from finding 'excusable neglect.'" *Nara*, 488 F.3d at 194; *cf. Mullin v. Balicki*, 875 F.3d 140, 154 (3d Cir. 2017) ("It is well established that clients must be held accountable for the acts and omissions of their attorneys." (internal quotation marks and citation omitted)). The District Court thus properly denied Janine's Rule 60(b)(1) motion.[10]

---

[10] The strength of a party's position may also be relevant in deciding upon Rule 60(b)(1) relief. *Cf. Mullin*, 875 F.3d at 154 & n.48 (noting that, in some circumstances, a party may be relieved of the consequences flowing from counsel's mistakes, based on a balancing of factors, including whether the underlying claim has merit). As explained below, even if we take that into account, it does not help Janine because she does not have a meritorious position.

10

**B.     The Standard of Review Applicable to the R&R Is Plain Error**

The next question is what standard of review we should apply in considering the merits of the R&R adopted by the District Court.  In general, "where a party fails to file timely objections to a magistrate judge's R & R in a habeas proceeding, and the district court then adopts the R & R, we will only review the R & R for plain error."  *Nara*, 488 F.3d at 194.  There are, however, indications in our case law that we may review an R&R de novo where "the district court elects to exercise its power to review a magistrate's report de novo[.]"  *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (citation omitted) (emphasis omitted); *see also Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 657 (3d Cir. 2011) ("Once the District Court independently reviewed the Magistrate Judge's R & R, the Commonwealth's 'previous failure to object [became] irrelevant.'"  (alteration in original) (citation omitted)).  Given that Janine failed to object to the R&R and that Rule 60(b)(1) relief was properly denied, plain error would seem to be the appropriate standard.  Nevertheless, citing our decision in *Henderson v. Carlson*, 812 F.2d 874 (3d Cir. 1987), Janine argues that we should review the R&R de novo because the District Court reviewed it de novo before adopting it.  She's mistaken both as to what the District Court did and as to the import of *Henderson*.

To begin with, the District Court's succinct order does not show that it conducted a de novo review.  It is better read as simply noting the lack of objections and then adopting the R&R.  Given the absence of any independent reasoning by the District Court, it seems clear that, while the Court no doubt gave thoughtful consideration to the R&R and record, it did not

11

engage in de novo review and decision making. When it said that it rendered its decision "upon independent review of the petition and the record and upon consideration of the Magistrate Judge's Report and Recommendation" (App. at 23), it was, we think, employing boilerplate language to assure the parties that it had looked at the petition and record before deciding to adopt the R&R; nothing more.[11] *Cf. City of Long Branch*, 866 F.3d at 100 (observing that, even in the absence of an objection, district courts must give "reasoned consideration" to R&Rs (citation omitted)).

Janine's reliance on *Henderson* is also misplaced. We held there that "the failure of a party to object to a magistrate's legal conclusions may result in the loss of the right to *de novo* review in the district court—but not in the loss of the statutory right to appellate review." *Id.* at 878-79. We also said, in dicta in a footnote, that, "when the district court elects to exercise its power to review a magistrate's report *de novo*, a party's previous failure to object becomes irrelevant" and that, "since the district court conducted a *de novo* review even though no objection was made, appellate review would arguably be proper even if we were to adopt a waiver rule." *Id.* at 878 n.4. We concluded that the district court had performed a de novo review because, "according to the district court's order, the magistrate's report was adopted only after 'independent review

---

[11] In *Evans v. Secretary Pennsylvania Department of Corrections*, we used the phrase "independently reviewed" instead of "reviewed de novo." Evans, 645 F.3d at 657; *Henderson*, 812 F.2d at 878 n.4. In context, we meant "reviewed de novo," but we do not think that every use of the phrase "independently reviewed" necessarily means "reviewed de novo."

12

of the entire record and applicable law.'" *Id.* (citation omitted). But the *Henderson* footnote does not bind us with respect to what is necessary to demonstrate that a district court has engaged in de novo review, nor does it tell us what standard of review we must employ on appeal even if there has been de novo review in the district court.

*Henderson* has an entirely different focus. It held, based on extensive reasoning, that appellate review is appropriate despite a party's failure to object to an R&R. *Id.* at 877-79. That is binding, and rightfully so. The *Henderson* footnote simply added that, even if we had not reached the holding we did in the text of the opinion, "appellate review would *arguably* be proper" on the facts then at hand, given the district court's order. *Id.* at 878 n.4 (emphasis added).[12] We have never adopted the *Henderson* footnote's conclusion on what is required to show that de novo review has occurred, although we have cited the footnote in subsequent decisions. For example, in *Nara*, we acknowledged the footnote in describing and responding to an argument that we should review an R&R de novo because the district court did so. 488 F.3d at 197. We concluded, however, that there was "no indication the District Court conducted an independent review of the entire record and applicable law *de novo*." *Id.* We did not have to decide what would be enough if there were some indication.

---

[12] Thus, the footnote was "not necessary to our ultimate holding[,]" and "properly is classified as *dictum*." *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013) (internal quotation marks and citation omitted).

13

Likewise, in *Evans*, we cited the *Henderson* footnote in concluding that, "[o]nce the District Court independently reviewed the Magistrate Judge's R & R, the Commonwealth's 'previous failure to object [became] irrelevant.'" 645 F.3d at 657 (second alteration in original) (quoting *Henderson*, 812 F.2d at 878 n.4). But, the district court in that case had "squarely addressed" the point at issue. *Id.* It was clear that there had been de novo review, so we had no occasion to assess whether perfunctory language in an order, like that discussed in the *Henderson* footnote, would necessarily be sufficient to show there had been such review.

Finally, in *City of Long Branch*, we cited the *Henderson* footnote for the basic proposition that a party's failure to object to an R&R becomes irrelevant if the district court has reviewed the R&R de novo. 866 F.3d at 100. How a party establishes that de novo review has occurred was not, however, at issue in the case. *Id.* at 100-02.

In short, a party seeking to avoid the consequences of failing to object to an R&R by proving that the district court has reviewed de novo the matter at hand must point to something more than boilerplate language in an order with no independent reasoning. Nothing of that sort appears in the record here.[13]

---

[13] Janine also emphasizes the fact that the District Court considered her objections to the R&R on the merits in denying her Rule 60(b)(1) motion. But that is irrelevant. We have already concluded that the Court's denial of Rule 60(b)(1) relief was appropriate, which leaves for review only the order adopting the R&R. It is the District Court's approach in adopting the R&R that affects our standard of review.

Consequently, we will review the R&R for plain error.

**C.     The R&R Was Not Plainly Erroneous in Concluding that the Petitioner Was Not in Custody**

The final question is whether the R&R was plainly erroneous in concluding that Janine was not in custody – and therefore that habeas jurisdiction was lacking – because she challenged only the 2010 charges, for which she received no penalty.[14]

We perceive no plain error.  In our recently-issued decision resolving the habeas petition of Janine's sister Jane, we held that Jane was not in custody on counts for which she received a sentence of "no further penalty" and, accordingly, that we could not review her challenges to those counts.  Here, Janine only challenges counts of conviction for which she received no further penalty, thus placing her case squarely in line with Jane's.

Janine raises two sets of arguments in her effort to save jurisdiction over her petition.  First, she contends that she received a "general sentence" on her 2010 and 2011 charges because those charges, and the sentences she received on them,

---

[14] On plain error review, Janine must show (1) there is an error, (2) it is plain, (3) it  affects substantial rights, and (4) it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993 (citation omitted); *United States v. Payano*, 930 F.3d 186, 192 (3d Cir. 2019) ("[The challenger] has the burden of demonstrating that the four [plain error] factors are met.").

15

were factually and legally tied together, and, in addition, her 2010 charges resulted in collateral consequences. Second, she argues that she is really challenging her 2011 charges directly. According to Janine, joining her retrial on the 2010 charges with her trial on the 2011 charges "caused prejudice and an unfair trial." (Opening Br. at 30.)[15]

Janine's first set of arguments is unavailing. Her sister Jane raised a similar argument that she received a "general sentence," but we rejected that since her sentencing order imposed discrete sentences for each count of conviction and sentences of no further penalty on the challenged counts. The same is true here. The fact that Janine's sentences may have been related and all her charges were litigated in the same proceedings does not establish that she was ever in custody for the convictions on the 2010 charges.[16] *See U.S. ex rel. Dessus*

---

[15] Janine also cites *Garlotte v. Fordice*, 515 U.S. 39 (1995), and *Peyton v. Rowe*, 391 U.S. 54 (1968), and suggests that her sentences should be treated as if they were imposed consecutively. Such a contention is unpersuasive because those cases dealt with *custodial sentences* imposed consecutively. Here, Janine received no custodial sentence whatsoever on her 2010 charges.

[16] In arguing that her sentences were interrelated, Janine points to the fact that she was sentenced to write apology letters to the Pennsylvania Senate staff and to pay restitution to the Senate, all of whom were affected by the 2010 crimes. She says that the apology letters were part of her sentence on the 2011 charges and that the Senate restitution was part of that sentence. The Superior Court, however, concluded that Janine was not actually sentenced to write the apology letters, so it is not clear how they are relevant. Furthermore, although the trial

16

*v. Pennsylvania*, 452 F.2d 557, 558-59 & n.1 (3d Cir. 1971) (concluding that a petitioner was not in custody to challenge a particular conviction because the sentence for that conviction was suspended, even though the petitioner received several convictions emanating from the same criminal episode and trial, the petitioner received lengthy sentences of imprisonment on many of those convictions, and the sentence on the challenged conviction was suspended). Nor are collateral consequences enough to create custody. *See Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam) ("[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it.").

As for Janine's second line of argument, it fails because nothing in the record indicates that she ever argued that she was deprived of a fair trial on the ground that she was tried for the 2010 and 2011 charges together, or that she otherwise intended to mount a habeas challenge to her convictions on the 2011 charges, before now. Thus, it was hardly plain error for the R&R to conclude that she was only raising a challenge to her convictions on the 2010 charges. And, in any event, "[w]e generally do not consider arguments raised for the first time on appeal, and will not do so in this case." *Gardner v. Grandolsky*, 585 F.3d 786, 793 (3d Cir. 2009) (per curiam) (citation omitted).

---

court's restitution order did not specify which set of charges the Senate restitution related to, nothing in the record indicates that it related to the 2011 charges, and a common sense reading of the record suggests that it related to the charges involving the Senate: the 2010 charges.

17

**III.** **CONCLUSION**

For the foregoing reasons, we will affirm the District Court's orders denying Janine Orie's Rule 60(b)(1) motion and dismissing her habeas petition for lack of jurisdiction.