**MASIMO CORPORATION, Plaintiff.**

v.

**PHILIPS ELECTRONIC NORTH AMERICA CORPORATION and Philips Medizin Systeme Böblingen GMBH, Defendants.**

**Masimo Corporation, Plaintiff,**

v.

**Philips Electronic North America Corporation and Philips Medizin Systeme Böblingen GMBH, Defendants.**

Civil Action No. 09–80–LPS–MPT, Civil Action No. 11–742–LPS–MPT

United States District Court, D. Delaware.

Signed March 31, 2014

Weil, Perry D. Oldham, and Steve Jensen, KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, CA, Attorneys for Plaintiff.

David E. Moore, POTTER, ANDERSON & CORROON, LLP, Wilmington, DE, Brian A. Rosenthal, Alan M. Grimaldi, Brian K. Andrea, MAYER BROWN, LLP, Washington, D.C., Steven Yovits, MAYER BROWN, LLP, Chicago, IL, Attorneys for Defendants.

## *MEMORANDUM OPINION*

### PUBLIC VERSION RELEASED ON APRIL 7, 2014

STARK, U.S. District Judge:

## I. INTRODUCTION

In this patent infringement action, Plaintiff. Masimo Corporation ("Masimo" or "Plaintiff"), asserts that Defendants, Philips Electronic North American Corporation and Philips Medizin Systeme Böblingen GMBH (collectively "Philips" or "Defendants"), infringe four patents: U.S. Patent Nos. 6.263,222 (the " '222 patent"); 5,632,272 (the " '272 patent"); 7,215,984 (the " '984 patent"); and 6,699,194 (the " '194 patent"). Philips contends, among other things, that it does not infringe Masimo's patents and, further, that these patents are invalid. In addition, Philips asserts that Masimo infringes three of Philips' patents: 5,448,991 (the " '991 patent"); U.S. Patent Nos. 6,122.535 (the " '535 patent"); and 6.725,074 (the " '074 patent"). In turn, Masimo asserts both non-infringement and invalidity of the Philips patents.[1]

Julia Heaney, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, DE, Joseph R. Re, Jon W. Gurka, Karen

1. Philips' counterclaims alleging antitrust violations have been bifurcated. (D.I. 67) The Court has also required the parties to reduce the number of patents-in-suit from the original fourteen asserted by Masimo and the ten asserted by Philips to a more manageable level; the number was eventually reduced to a total of seven asserted patents with the remaining seven held in abeyance. (*See* D.I. 662 at 4) On November 22, 2011, Defendants moved to consolidate the Court's consideration of the issues concerning the seven patents held in abeyance from the 09–80–LPS–MPT action with a separate second action, 11–742–LPS–MPT ("*Masimo II*"), which involved two additional patents asserted by Ma-

When this case was assigned to the now-retired Honorable Joseph J. Farnan, Jr., it was referred to the Honorable Mary Pat Thynge, Chief U.S. Magistrate Judge. (D.I. 61) After the case was later reassigned to the undersigned District Judge, the referral was maintained. (*See also* C.A. No. 11–742–LPS–MPT D.I. 22 (referring 11–742 matter to MPT)).[2] Judge Thynge has done a tremendous amount of work in these matters, including conducting two Markman hearings (D.I. 210, 750) and handling numerous discovery disputes (*see, e.g.,* D.I. 63, 326).

More particularly. Judge Thynge issued three Reports and Recommendations ("Reports") addressing the now-pending **nineteen (19) motions** filed by the parties. Specifically, Judge Thynge:

(a) on April 2, 2013, issued a 200–page Report making recommendations as to the disposition of seven summary judgment motions filed by Masimo and an additional eight summary judgment motions filed by Philips (D.I. 662) ("SJ Report");

(b) on May 20, 2013, issued a 67–page Report making recommendations as to the disposition of two *Daubert* motions filed by Masimo and another two *Daubert* motions filed by Philips (D.I. 704) ("*Dauhert* Report"); and

(c) on June 14, 2013, issued a 17–page Report making recommendations as to the disposition of Philips' motions for summary judgment of no willful

infringement and no lost profits damages (D.I. 721) ("Damages Report").[3]

Both parties filed objections to various aspects of the Reports. (*See* D.I. 672, 674, 696, 697, 716, 717, 726, 727, 733, 734, 744, 745, 751, 752, 755, 756) The Court heard oral argument on the objections on December 2, 2013. (D.I. 774) ("Tr.")

## II. OBJECTIONS TO MAGISTRATE JUDGE REPORTS AND RECOMMENDATIONS

### A. Initial Matters

Before turning to the objections filed by the parties, the Court takes the opportunity to make some comments about how it views objections to Reports and Recommendations filed by Magistrate Judges.

#### 1. Objections Are Not Necessary In Order to Preserve Appellate Rights in the Court of Appeals

The parties appear to dispute whether there is a requirement that they must first object to every issue decided by the Magistrate Judge in order to preserve their right to appeal issues to the Court of Appeals for the Federal Circuit, Philips, citing Third Circuit law, contends that a failure to object to a Magistrate Judge's recommendation does not result in a waiver of the right to appeal that recommendation in the Court of Appeals. (*See* D.I. 672 at 1 n.2) (citing *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir.1987))[4] Masimo,

simo against Philips. (C.A. No. 11–742–LPS–MPT D.I. 15) On April 16, 2012, the Court granted the motion to consolidate. (C.A. No. 11–742–LPS–MPT D.I. 38)

**2.** Unless otherwise noted, all citations to the docket index ("D.I.") are to entries in C.A. No. 09–80–LPS–MPT.

**3.** On August 29, 2013, in *Maximo II.* Judge Thynge also issued a 51–page Report making

recommendations as to the proper construction of various disputed claim terms in the patents-in-suit. (D.I. 750) ("Claim Construction Report") Objections to the Claim Construction Report will be addressed in a separate opinion.

**4.** Nonetheless, "out of an abundance of caution," Philips objected to all issues decided against it. (D.I. 672 at 1–2 n.2), though its

however, takes the position that "Philips has not preserved any rights for appeal as to objections not specifically discussed." (D.I. 726 at 1 n.1)

■ The circumstances in which this question arises in the instant case are complicated by the fact that any appeal would be to the Court of Appeals for the Federal Circuit ("CAFC"), raising the threshold issue of whether the Federal Circuit would apply its own law or Third Circuit law to assess waiver.[5] However, for present purposes, it seems that the correct conclusion is that appellate rights in the Court of Appeals are not waived by a failure to object to a Magistrate Judge's decision, because either Third Circuit law applies—in which case *Henderson* governs—or Federal Circuit law applies, and the Court has been pointed to no authority indicating that the Federal Circuit has adopted a requirement of such objection.[6]

■ The failure to object may result in waiver of the right to further review of the recommendation or determination in the District Court by a District Judge. *See Henderson*, 812 F.2d at 878–79 (3d Cir. 1987) ("[F]ailure of a party to object to a magistrate's legal conclusions may result in the loss of the right to de novo review in the district court—but *not in the loss of the statutory right to appellate review*.") (emphasis added). But nothing in the caselaw, statutes, or Rules of Civil Procedure that this Court has reviewed supports the proposition that appellate rights in the Court of Appeals are waived absent a timely objection to a Magistrate Judge's decision being filed in the District Court. To the contrary, the Supreme Court has refrained from deciding whether 28 U.S.C. § 636(b)(1)(C) of the Federal Magistrates Act "mandates a waiver of appellate review absent objections." *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The Court added that "a court of appeals may adopt a rule conditioning appeal, when taken from a district

briefing only addresses some of those objections. "Philips submits these objections to ensure that all issues decided against it are preserved on appeal." (*Id.* at 1)

5. Generally, Federal Circuit law governs whether the CAFC has appellate jurisdiction over an appeal. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1146 (Fed. Cir.2011); *see also Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 844 (Fed.Cir.1987) (en banc). On the specific waiver question, however, the answer as to which law would be applied is not entirely clear. In the analogous circumstance of determining whether a party has waived the right to make a post-verdict renewed JMOL on an issue on which it failed to move for JMOL prior to verdict, the Federal Circuit has appeared to vary between applying regional circuit law and its own law. *Compare Zodiac Pool Care, Inc. v. Hoffinger Indus., Inc.*, 206 F.3d 1408, 1416 (Fed.Cir.2000) (applying regional circuit law to *matters of procedural law* to find party "waived its right to JMOL on the issue of DOE infringement by not renewing its motion at the close of trial"), *with Duro–Last, Inc. v.*

*Custom Seal, Inc.*, 321 F.3d 1098, 1106 (Fed. Cir.2003) (applying Federal Circuit law after finding *issue pertained uniquely to patent law* because it "involve[d] the specific question of whether a pre-verdict JMOL motion directed to inequitable conduct and the on-sale bar is sufficient to preserve the right to a post-verdict JMOL motion directed to obviousness").

6. In *Clock Spring, L.P. v. Wrapmaster, Inc.*, the Federal Circuit held that a party waived an argument—that the validity of dependent claims should be analyzed separately from the validity of the related independent claim—when it attempted to assert that position for the first time on appeal after failing to make the argument in opposition to a motion for summary judgment and in connection with review of a Magistrate Judge's recommendation. *See* 560 F.3d 1317, 1328–29 (Fed.Cir. 2009). However, since *Clock Spring* involved a failure to present an argument *at all* in the District Court, it does not stand for the broader proposition that litigating an issue before a Magistrate Judge yet not objecting to a District Judge constitutes a waiver of review in the Federal Circuit.

court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired." *Id.* at 155, 106 S.Ct. 466. The Court is unaware of either the Third Circuit or the Federal Circuit adopting such a requirement.

In the Court's view, while the only issues on appeal in the District Court are those that are specifically and adequately addressed in the objections, all issues that were litigated before the Magistrate Judge remain potentially available to raise on appeal in the Federal Circuit.

### 2. Generalized Objections Are Unhelpful and Will be Construed as a Waiver of the Right to District Judge Review

 Philips has objected to every issue Magistrate Judge Thynge decided against Philips in the course of addressing the nineteen pending motions. (*See* D.I. 672 at 1–2; D.I. 716 at 1–2; D.I. 733 at 1–2) However, Philips has studiously avoided actually briefing all such objections. Indeed, in many cases Philips has failed even to identify the issue on which it is objecting, and has failed entirely to explain on what basis it is objecting.

This type of generalized objection is entirely unhelpful to a District Judge attempting to determine where further judicial attention is required to enable a case to progress, especially given that "[t]he district judge in the case *must* consider timely objections." Fed. R. Civ. P. 72(a) (emphasis added). Philips' approach is inconsistent with the Federal Rules of Civil Procedure provisions relating to objections, *see* Fed. R. Civ. P. 72(b)(2) (providing, with respect to dispositive motions, "a party may serve and file *specific* written

objections to the proposed findings and recommendations") (emphasis added), as well as the Federal Magistrates Act. *see* § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or *specified* proposed findings or recommendations *to which objection is made*.") (emphasis added). Finally, Philips' tactic overlooks the clear requirements of this Court's Standing Order for Objections Filed under Fed. R. Civ. P. 72 ("Standing Order") (October 9, 2013), which states in relevant part that written objections to findings of fact and recommendations by a Magistrate Judge pursuant to § 636(b)(1)(B) "shall *specify* the portions of the findings and recommendations to which objection is made and *the basis for each objection,* and *shall be supported* by legal authority." Standing Order ¶ 4 (emphasis added); *see also id.* ¶ 3 ("All orders or rulings of a Magistrate Judge authorized by 28 U.S.C. § 636(b)(1)(A) shall be final unless a party timely files written objections. The objections shall *specify* the matters to which the party objects and *the manner in which it is claimed that the order or ruling is clearly erroneous or contrary to law*.") (emphasis added).[7]

 Accordingly, Philips' generalized objections are insufficient to preserve Philips' right to further review by the District Court of the Magistrate Judge's recommendations and decisions. *See Goney v. Clark,* 749 F.2d 5, 6 (3d Cir.1984) ("To obtain de novo determination of a magistrate's findings by a district court. 28 U.S.C. § 636(b)(1) requires both timely and *specific* objections to the report.") (emphasis added); *Palmer v. Apfel,* 995

---

**7.** It is worth noting that Philips' approach would also render the page limits on objections essentially ineffectual. Standing Order ¶ 7 ("[O]bjections and answers are limited to ten (10) double-spaced pages, and any applications for modification of these limits shall be reviewed by the Magistrate Judge.").

F.Supp. 549, 552 n. 4 (E.D.Pa.1998) ("General or blanket objections do not comply with Rule 72(b) and need not be addressed by the district court.").[8] "[P]roviding a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Goney*, 749 F.2d at 7 (citing H.R.Rep. No. 1609, 94th Cong., 2d Sess. 4–8). Thus, here the Court will only evaluate objections the objecting party has specifically articulated, including an express statement of, at the very least: the issue, the adverse determination, and the basis on which the adverse determination is purportedly in error. *See id.* ("[T]he Supreme Court has recognized the discretion afforded federal district courts in their use of magistrate's reports.") (citing *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

Hence, the Court agrees with Masimo that Philips' objections that are not briefed have been waived (with respect to review by a District Judge). (*See* Tr. at 6) [9]

### 3. *Underlying Briefs Cannot Be "Incorporated by Reference"*

In several instances, Philips and Masimo cite appropriately to their underlying briefing filed before Magistrate Judge Thynge in connection with the motions which are now the subject of the pending objections. However, in some places. Philips' objection briefs indicate that Philips is "incorporating by reference" its underlying briefing. (*See, e.g.,* D.I. 672 at 4 n.4 ("Philips incorporates by reference[ ] its summary judgment briefs pertaining to this section.") (citing D.I. 521 at 10–14); D.I. 672 at 13 n.7 (attempting to incorporate by reference 14 pages of briefing at D.I. 395 at 10–17 and D.I. 593 at 4–9); *see also* D.I. 672 at 20 n.12; *id.* at 23 n.15) At the hearing, Philips explained that its intention was to direct the Court to where it could find additional briefing, if desired, and to provide background. (Tr. at 21)

■ Underlying briefs cannot be "incorporated by reference" as a way of avoiding the page limits on objections to a Magistrate Judge's orders and reports. The default page limits for objections—ten pages for the objections, ten pages for the response, and no reply—are adequate in most instances to convey to the District Judge the issues in dispute and the bases for why the Magistrate Judge's determination should be reversed, modified, or affirmed. When appropriate—as in the instant case—the Magistrate Judge has the discretion to extend the page limits for objections. (*See* D.I. 662 (providing 40 pages per side for briefing objections); D.I. 704 (providing 15 pages per side)) If a party were permitted to "brief" an objection by, for instance, devoting a paragraph

---

8. *See also Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir.1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."): *Page v. Lee,* 337 F.3d 411, 416 n. 3 (4th Cir.2003) ("[P]etitioner's failure to object to the magistrate judge's recommendation with the specificity required by the Rule is, standing alone, a sufficient basis upon which to affirm the judgment of the district court as to this claim.").

9. Most egregiously, Philips, in its *Daubert* objections brief, objects to "all issues decided against Philips," and proceeds to list among "all" such issues nine in particular, *only four of which Philips chose to brief.* (*See* D.I. 716 at 1–2) Philips states: "given the number of issues for the Court to consider, Philips draws specific attention to the issues listed in the first four bullet points." (*Id.* at 2) In its invalidity and non-infringement summary judgment objections, Philips states it "draws *specific attention* to the issues discussed in detail below," (D.I. 672 at 2) (emphasis added), but in fact these are the only objections to which Philips devotes *any* attention.

of its objections brief to the issue, and then referring the Court to 10 pages of argument made in the underlying brief, the page limits on objections would be eviscerated.

#### 4. *"Rehashing" Is Appropriate; New Arguments Are Not*

■ Masimo faults Philips for merely "rehashing" arguments it made (unsuccessfully) to Chief Magistrate Judge Thynge.[10] Philips criticizes Masimo for failing to come up with anything "new" in its objections.[11] These are not persuasive complaints in the context of District judge review of objections to Magistrate Judge determinations. To the contrary, with limited (if any) exception, parties objecting to a Magistrate Judge's report or order are required to adhere to the arguments, evidence, and issues they presented first to the Magistrate Judge. Far from being inappropriate, rehashing is exactly what parties are expected to do. In this context, in fact, it is *new* arguments that are problematic. *See* Standing Order ¶ 5 (requiring objecting party to provide "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and describing the good cause for failing to previously raise the new legal/factual arguments before the Magistrate Judge").[12]

Of course, in their objections, parties may—and, indeed, should—explain their view of the Magistrate Judge's determinations and analysis. *See CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 178 (D.Del.2003) ("While it is typically not good practice to advance new arguments in an objection to rulings by the Magistrate Judge, the Court is free to consider on plenary review the legal implications of all aspects of the issue before it."). In this regard, parties are entitled to leeway akin to the "reasonable elaboration" the Court allows an expert to use in her trial testimony beyond what the expert disclosed in her pretrial expert report. *See, e.g., nCube Corp. v. SeaChange Int'l, Inc.*, 809 F.Supp.2d 337, 347 (D.Del.2011) ("[C]ourts do not require 'verbatim consistency with the report, but ... allow[ ] testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report.'") (citation omitted); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F.Supp.2d 568, 581 (D.Del. 2008).

#### 5. *The Proper Standard of Review Must Be Applied*

■ At times in their objections briefing, the parties fail either to identify the standard of review applicable to their objections or misstate the appropriate stan-

---

**10.** For instance, Masimo contends "Philips' entire objection brief is a rehash of its *Daubert* Motions." (D.I. 726 at 1; *see also id.* at 4 ("Philips' objection still fails to address Mr. Wagner's methodology, and instead, merely repeats arguments from Philips' *Daubert* Motion."))

**11.** Philips contends: "All of Masimo's arguments were considered and rejected by the [SJ] Report. Thus, Masimo has not provided any new arguments or evidence for the Court to consider." (D.I. 696 at 1; *see also id.* at 28 ("Masimo ... cites nothing to establish that the Court's reasoning was in error and in-

stead simply reiterates the arguments it made in its opposition brief."); *id.* at 29 (faulting objections for being "nothing more than a rehashing of the same arguments it [Masimo] made in its opposition brief"))

**12.** Thus, for example, without good cause. Philips cannot press the admittedly new dispute as to whether certain expert reports filed by Masimo's experts, Kiani and Shah, were untimely. Philips acknowledges it did not make this argument to Judge Thynge; hence, it is "new" and will not be considered by this District Judge. (*See* D.I. 745 at 3–5)

dard of review.[13] As the District Judge is essentially undertaking appellate review of the work of a Magistrate Judge, it is imperative that the parties accurately articulate and apply the correct standard of review. *See generally Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1019 (Fed.Cir.1987) ("There is a significant difference between the standards of 'substantial evidence' and of 'clearly erroneous', and in close cases this difference can be controlling.").[14] In particular, if the applicable standard of review is abuse of discretion, for example, this District Judge will affirm a Magistrate Judge's decision even if this District Judge disagrees with it provided it is not an abuse of discretion.

## B. Motions for Summary Judgment of Invalidity and Non-infringement

### 1. The Parties' Objections

Chief Magistrate Judge Thynge issued the SJ Report on April 2, 2013. (D.I. 662) On April 19, 2013, the parties filed their respective objections to the SJ Report (D.I. 672, 674) and responded to those objections on May 6, 2013 (D.I. 696, 697).

Masimo contends that Judge Thynge erred in concluding that: (1) Masimo's '222 patent is invalid for lack of written description; (2) Philips does not infringe Masimo's '984 patent; (3) the Ukawa reference is prior art to Masimo's '984 patent; and (4) Masimo's '194 patent is invalid for lack of written description. (*See* D.I. 674 at 1)

Philips objects to Judge Thynge's conclusions that: (1) Masimo does not infringe the '535 patent literally; (2) Masimo does not infringe the '535 patent under the doctrine of equivalents; (3) there are factual issues necessitating trial regarding the invalidity of Masimo's '984 patent; (4) it is unnecessary to address Philips' non-infringement arguments specific to claims 15, 16, 19, 20, 53, and 54 of the '984 patent on the separate grounds that the functions recited in those claims are not performed by the claimed module; (5) there are factual issues necessitating trial regarding the anticipation of Masimo's '222 patent by the Hall reference; and (6) there are factual issues necessitating trial regarding Philips' non-infringement of the '272 patent.

### 2. Legal Standards and Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by

---

**13.** For instance, in its *Daubert* objections, Philips broadly—and incorrectly—asserts: "the Court must 'determine de novo any part of the magistrate judge's disposition that has been properly objected to.'" (D.I. 716 at 2) (quoting Fed.R.Civ.P. 72(b)) However, this standard of review applies only to dispositive matters and prisoner petitions. *See* Fed. R.Civ.P. 72(b).

**14.** *See also W. v. Redman*, 530 F.Supp. 546, 547 (D.Del.1982) ("The choice between these provisions is *important because of the different standard of review*. Proposed findings and recommendations under Section 636(b)(1)(B) are subject to 'de novo determination' under Section 636(b)(1)(C); a magistrate's order under Section 636(b)(1)(A) is reviewable under a 'clearly erroneous or contrary 10 law' standard.") (emphasis added).

citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

If the moving party carries its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (internal quotation marks omitted). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

■ A Magistrate Judge has authority to make a report and recommendation as to resolution of a case-dispositive motion, such as a motion for summary judgment. *See* § 636(b)(1)(B); *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review. *See* § 636(b)(1); Fed.R.Civ.P. 72(b)(3). Because a motion for summary judgment is considered a dispositive matter, the conclusions of the Magistrate Judge in connection with such a motion are reviewed *de novo*. *See N.L.R.B. v. Frazier*, 966 F.2d 812, 817 (3d Cir.1992). The Court may accept, reject, or modify the recommendations of the Magistrate Judge. *See* § 636(b)(1); *Hill v. Beyer*, 62 F.3d 474, 481 (3d Cir.1995). The Court may also receive further evidence or return the matter to the Magistrate Judge with instructions for further proceedings. *See* § 636(b)(1).

### 3. Plaintiff's Objections

#### a. Masimo's '222 patent—invalidity—lack of written description

■ Masimo objects to Judge Thynges recommendation that because "nothing in

claim 17 and dependent claim 18 or the specification constitutes an adequate description of all signal processors for use in a non-correlation canceler," summary judgment of invalidity due to lack of written description should be granted to Philips. (D.I. 674 at 1) (citing D.I. 662 at 31) Masimo argues that Judge Thynge's conclusion is contrary to the Court's claim construction, ignores the disputed factual record, and also conflicts with settled precedent.

■ The parties' dispute largely turns on a question of law: whether all claimed embodiments have to be disclosed in a specification. Masimo is correct that the law imposes no such requirement. *See Martek Biosciences Corp. v. Nutrinova, Inc.,* 579 F.3d 1363, 1371 (Fed.Cir.2009) ("[A] patent claim is not necessarily invalid for lack of written description just because it is broader than the specific examples disclosed."); *Bilstad v. Wakalopulos,* 386 F.3d 1116, 1123 (Fed.Cir.2004) ("We cannot agree with the broad proposition ... that in every case where the description of the invention in the specification is narrower than that in the claim there has been a failure to fulfill the description requirement in section 112."); *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1121 (Fed.Cir.1985) (en banc).

In defending the recommendation of invalidity. Philips cites to *LizardTech. Inc. v. Earth Res. Mapping, Inc.,* 424 F.3d 1336, 1346 (Fed.Cir.2005), but *Lizard-Tech*'s holding is limited to the proposition that "a patentee cannot always satisfy the requirements of section 112, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed." *Id.* at 1345–46 (holding method claim for "creating a seamless array of DWT coefficients *generically*" failed to meet § 112 written description requirement where only one embodiment was disclosed for *a particular method* of creating a seamless DWT) (emphasis added). As the Federal Circuit noted in its decision in *LizardTech,* a claim "will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *Id.* at 1345. It is "unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention." *Id.*

Returning to the § 112 inquiry, the intrinsic evidence in the specification, addressed during claim construction,[15] remains evidence on which Masimo's expert may rely in opining there is no invalidity due to lack of written description. *See Energy Transp. Grp., Inc. v. William Demant Holding A/S,* 697 F.3d 1342, 1350 (Fed.Cir.2012) *cert. denied,* —— U.S. ——, 133 S.Ct. 2010, 185 L.Ed.2d 868 (2013) (finding "the specification supports the district court's claim construction, and provides adequate written description to support the full scope of the claims as construed"). In describing what the specifi-

---

15. During review of the Report and Recommendation regarding claim construction (D.I. 210), this Court sustained Masimos objection that the "signal processor" of Claim 17 should not be limited to embodiments involving a correlation canceler (D.I. 319 at 2–3), based on, inter alia, the language in the '222 patent's specification that "[t]he signal processor *may comprise* a correlation canceler, such as an adaptive noise canceler." *Id.* at 3 (citing '222 patent at 6:30–32) (emphasis added); *see also id.* ("The present invention may be applied in any situation where a signal processor comprising a detector receives a first signal which includes a first primary signal portion and a first secondary signal portion and a second signal which includes a second primary signal portion and a second secondary signal portion") (quoting '222 patent at 50:47–52)

cation conveys to a person of ordinary skill in the art, Masimo's expert. Dr. Baura, opined "the '222 patent contains a broad disclosure describing numerous techniques for calculating arterial oxygen saturation without significant interference from motion-induced noise." (D.I. 431 Ex. 23 ¶ 332–35)

Philips proffered competing evidence through its expert. Dr. Stone, who challenged Dr. Baura's opinion: "[Dr. Baura's] interpretation seems to be that any pulse oximeter that claims motion tolerance falls within the scope of claim 17. The specification does not convey that the inventors were in possession of the full scope of that invention when they filed the '222 patent application." (D.I. 429 Ex. 14B ¶ 16) This conclusory statement, however, amounts to little more than a description of Dr. Baura's argument and a recitation of the standard.

 On this record, given the Court's legal conclusions, written description is a triable issue, as a reasonable juror could conclude from the record that Philips has failed to prove by clear and convincing evidence [16] that the written description does not reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. The Court finds its conclusion

is further supported by the longstanding principle that the written description inquiry is quintessentially a question of fact. *See Union Oil Co. of California v. Atl. Richfield Co.*, 208 F.3d 989, 1000 (Fed.Cir. 2000): *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed.Cir.2010) ("This inquiry, as we have long held, is a question of fact.").[17] Accordingly, Masimo's objection will be SUSTAINED and the Court will DENY Philips' motion for summary judgment of invalidity of the '222 patent due to lack of written description.

### b. Masimo's '984 patent— non-infringement

Masimo objects to the SJ Report's recommendation that summary judgment of non-infringement be granted to Philips with respect to Masimo's '984 patent. (D.I. 674 at 14) (citing 662 at 69–70) Masimo's objection is based on the SJ Report's application of a narrower construction of the asserted claims than the SJ Report applies to the same claims in the context of analyzing Philips' invalidity contentions.[18] Philips stated during argument on the objections that it does not oppose the Court sustaining Masimo's objection to this portion of the SJ Report. (Tr. at 55) Accordingly, the Court will SUSTAIN Masimo's

---

16. *See Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1072 (Fed.Cir.2005) ("[I]nvalidating a claim requires a showing by clear and convincing evidence that the written description requirement has not been satisfied.").

17. Philips contends that acceptance of Masimo's position would result in § 112 validity issues being resolved at claim construction. (D.I. 696 at 4) Masimo disagrees, explaining that its position is that there are questions of material fact—some of which overlap with inquiries that arose in connection with claim construction—which leave for the Court a classic "battle of experts." (Tr. at 11–12) The Court agrees with Masimo.

18. More specifically, Philips proposed a broad construction of the asserted claims of the '984 patent, a construction on which it based its motion for summary judgment of invalidity of the '984 patent. (*See* D.I. 662 at 44–45) Philips further moved for summary judgment of non-infringement of the '984 patent, but only in the event the Court rejected Philips' claim construction position and, instead, adopted Masimo's narrower construction. (*See id.* at 66) Magistrate Judge Thynge agreed with Philips' broader claim construction (*id.* at 69–70), and no party has objected to this decision.

objection and DENY Philips' motion for summary judgment of non-infringement of Masimo's '984 patent.[19]

### c. Masimo's '984 patent— Ukawa reference

The SJ Report recommends that the Ukawa reference be considered prior art to Masimo's '984 patent and that Masimo not be permitted to challenge Ukawa's status as prior art. Masimo's objection to this determination is reviewed for abuse of discretion, as it constitutes a non-dispositive pre-trial matter. *See* § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). Specifically, under the circumstances here, what the Court is essentially reviewing is the parties' conduct in discovery and the Magistrate judge's interpretation of a scheduling order as well as her imposition of what is effectively a sanction. *See Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 174 (E.D.Pa.2004) ("When a magistrate judge's decision is on a highly discretionary matter, courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard."); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J.1998) ("Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of that discretion.").[20] Here, while recognizing that the Magistrate Judge was much closer to this case and the parties' conduct

than the undersigned District Judge has been, the Court determines that the decision to treat Ukawa as prior art—and preclude Masimo from challenging this determination—was an abuse of discretion.

■■ The SJ Report agrees with Philips that because Masimo failed during discovery to challenge Ukawa as not *prior* art, the burden shifted to Masimo, as the patentee, to prove that Ukawa is not prior art for purposes of a § 102(e) analysis. The Court disagrees with this analysis. The presumption of patent validity "requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of a particular reference as prior art." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed.Cir.2001); *see also* 35 U.S.C. § 282. Therefore, Philips, as the party challenging the validity of Masimo's '984 patent, at all times bears the burden of showing "the invention was described in ... a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent." 35 U.S.C. § 102(e) (as amended 1999).

By contrast, the SJ Report effectively imposed the burden on Masimo to refute Philips' contention that Ukawa is prior art. The SJ Report reasons that in "its July 30, 2010 responses to Philips' invalidity contentions, Masimo argued a different reference was not § 102(e) prior art, but, with respect to Ukawa, merely responded by asserting the absence of certain claim limi-

19. This determination requires the Court to address Philips' alternative position that it is entitled to summary judgment of non-infringement on claims 15, 16, 19, 20, 53, and 54 of the '984 patent, which the Court does below. It was not necessary for Judge Thynge to address this position because she recommended summary judgment of non-infringement on all counts.

20. Philips originally submitted that the standard of review should be clearly erroneous and contrary to law (D.I. 696 at 18), while Masimo failed to provide the standard (*see* D.I. 674). However, at oral argument, both parties appeared to agree that the Court should apply an abuse of discretion standard to its review of this issue. (*See* Tr. at 56, 70)

tations." (D.I. 662 at 53) This reads too much into Masimo's responses to the invalidity contentions. The Court is unaware of any statute, rule, or caselaw that requires a party to disclose to its opponent the effects of the position the party is advocating (i.e., Masimo's position as to the dale of invention)—and neither the SJ Report nor Philips cites any such authority—and in the absence of such an obligation it is not proper to read Masimo's silence on this issue, on which Philips has the burden of proof, as an admission of Ukawa's status. Thus, the SJ Report errs as a matter of law.

■ The SJ Report could be viewed as imposing a sanction on Masimo for conduct during discovery that may have prejudiced Philips. (*Id.* at 54) ("Whether the result of oversight or gamesmanship, first raising this issue in response to Philips' motion for summary judgment deprived Philips the opportunity to meaningfully respond to or rebut inventor Diab's declaration"). However, application of the *Pennypack* factors [21] leads the Court to conclude: Philips did not suffer (i) "prejudice or surprise." since Masimo timely disclosed the '984 patent's *invention date*—the October 1992 reduction-to-practice date—in its November 30, 2011 discovery responses and the *filing date* of the Ukawa reference is knowable from the face of the patent; Philips has (ii) the ability "to cure the prejudice" by challenging Masimo's inven-

tion date evidence at trial; (iii) allowing Masimo's evidence will not "disrupt the orderly and efficient trial of the case or of other cases in the court," especially since a trial date has not yet been set: and (iv) Masimo has not exhibited "bad faith or willfulness in failing to comply with the court's order" particularly given that it complied with the disclosure deadlines just mentioned above. In sum, consideration of the *Pennypack* factors leads to the conclusion that striking Masimo's opposition to treating Ukawa as prior art is not warranted.

Given the above analysis, the Court is compelled to find that the SJ Report committed an abuse of discretion. Masimo's objection will be SUSTAINED and Masimo will be permitted to challenge the Ukawa reference's status as prior an to Masimo's '984 patent.

### d. Masimo's '194 patent—invalidity— lack of written description

■ Masimo objects to the SJ Report's conclusion that Philips carried its burden to prove, by clear and convincing evidence, that the specification of Masimo's '194 patent fails to convey to a person of ordinary skill in the art that the inventor had possession of the claimed invention for estimating pulse rate using an unscrubbed signal. (D.I. 674 at 28) [22] Undertaking de novo review, the Court agrees with the Magistrate Judge's conclusion. Accord-

---

**21.** *See Meyers v. Pennypack Woods Home Ownership Assn.,* 559 F.2d 894, 904–05 (3d Cir.1977). It is unclear whether the Magistrate Judge undertook a *Pennypack* analysis. Masimo insists that she did not (*see* D.I. 674 at 26) and it is true that the SJ Report contains no citation to *Pennypack.* However, the SJ Report does discuss many of the *Pennypack* factors, without explicitly describing them as such. (*Sec* D.I. 662 at 52–54) It is well settled that a judge, including a Magistrate Judge, is not required to describe explicitly every step she took in her analysis.

**22.** The full objection is made to the following conclusion: "[T]he '194 Patent does not disclose possession of an invention that can estimate pulse rate utilizing a signal determined to contain motion artifacts. Consequently, the asserted claims which would cover such estimation, are invalid for lack of adequate written description." (D.I. 674 at 28) (quoting D.I. 662 at 129)

ingly. Masimo's objection will be OVER-RULED and Philips will be granted summary judgment of invalidity of Masimo's '194 patent.

With respect to asserted claims 1, 2, and 15 of the '194 patent. Philips argued before Judge Thynge that "the claims of the '194 patent broadly cover classifying both clean and unclean spectral data." (D.I. 662 at 121) Philips' position is consistent with the claim construction recommended by the Magistrate Judge and adopted by the Court. (*See* D.I. 210 at 14–15; D.I. 319) Masimo appeared not to contest this broad characterization of the scope of the '194 patent's claims. (D.I. 662 at 127)

It is undisputed that the specification of the '194 patent discloses a process for obtaining pulse rate using signals containing a small amount of noise *below a certain threshold* as such signals are already sufficiently "clean" so as not to require scrubbing. (*See* D.I. 696 at 29–30; '194 patent at 15:30–38; Tr. at 125)[23] However, not only does the specification fail to provide any express disclosure of a process to obtain pulse rate for signals with noise *above a certain threshold* that *remain unscrubbed,* but the evidence presented by Philips demonstrates that the specification fails to convey to those skilled in the art that the inventor was in possession of such an invention.

In reaching its conclusion that the specification is inadequate in this regard, the SJ Report points to clear language in the specification. Every embodiment discussed in the specification states that if noise is above a certain threshold then the signal must be scrubbed, (D.I. 662 at 128 (citing '194 patent at 3:43–49 ("If the difference does *exceed a threshold* value, then the waveform *must be scrubbed,* and the scrubbing coefficient corresponds to the magnitude of the largest ratio line.") (emphasis added)); '194 patent at 16:45–51 ("If, in the decision block 1308, the delta d is *greater than a threshold value,* then motion artifacts are present and the process advances to a decision block 1312 to continue the calculation of a.") (emphasis added)) While the law does not require a specification to disclose every embodiment that is claimed, *see Martek,* 579 F.3d at 1371; *LizardTech,* 424 F.3d at 1345, the SJ Report cites to additional evidence, in particular testimony of the '194 patent's inventor, Mr. McCarthy, confirming that the specification here fails to convey to a person of ordinary skill that the inventor was in possession of a process using unscrubbed signals above a certain threshold. (*See* D.I. 662 at 128) (citing D.I. 507 Ex. 3 at 230:6–12) Further, McCarthy "testified he did not know if the rules would be effective if the signal was not subjected to the scrubber, and would have to experiment to make that determination." (*Id.* at 128–29) (citing D.I. 507 Ex. 3 at 276:22–277:7)

Masimo's contention that Dr. Baura's testimony raises a genuine issue of material fact is unavailing. Although Dr. Baura's expert report and declaration focus on unclean signals, every example she cites refers exclusively to the patent's description of processing data that does not exceed the threshold value. (D.I. 431 Ex. 23 at ¶ 342) (citing '194 patent, 16:50–55); D.I. 508 at ¶ 8 (citing '194 patent, 3:43–47, 15:18–27, 15:28–38; 16:49–55)) Therefore, the record—which principally consists of the intrinsic evidence. Mr. McCarthy's testimony, and Dr. Baura's report and deposition testimony—only permits a reasonable factfinder to find, by clear and convincing

23. The parties are now in agreement that no signal is purely "clean" and that "clean," as used in the patent, refers to a signal that is sufficiently clean of noise so that it can be used to make determinations about oxygen levels.

evidence, that the specification of the '194 patent fails to convey to those skilled in the art that the inventor was in possession of an algorithm for estimating pulse rate with an unscrubbed or uncleaned signal containing motion artifacts above a threshold.

#### 4. Philips' Objections

##### a. Philips' '535 patent—literal infringement

■ The SJ Report recommends granting summary judgment of non-infringement to Masimo with respect to literal infringement of Philips' '535 patent. (D.I. 662 at 168) Philips contends that Masimo has no evidence to rebut Philips' direct and circumstantial evidence of literal infringement, which the SJ Report purportedly ignored. (D.I. 672 at 11)

Philips' expert, Dr. Ochroch, opined that [Redacted][24], and he has observed Masimo's pulse oximeters being used in these circumstances. (D.I. 522 ¶¶ 5–6, 8) In addition, documentary evidence proffered by Philips suggests that the Masimo accused devices were designed for patients suffering from brachycardia and had been tested on them. (See D.I. 662 at 165 n.807) in Philips' view, this evidence has not been rebutted by Masimo. Further, Philips' second expert, Stone, has designed pulse oximeters and opines that the pertinent computer code will be used under the circumstances identified by Dr. Ochroch. (Tr. 46–47)

[Redacted]

■ A "patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence." *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1219 (Fed.Cir.2006) ("There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable per se."). Undertaking de novo review, and drawing all reasonable inferences in favor of Philips as the non-moving party, the Court agrees with Philips that mere is sufficient evidence in the record from which a reasonable factfinder could conclude that Masimo literally infringes the '535 patent. *See Alco Standard Corp. v. Tennessee Valley Auth.*, 808 F.2d 1490, 1503 (Fed.Cir.1986) ("Although the evidence of infringement is circumstantial, that does not make it any less credible or persuasive.")

Therefore, the Court will SUSTAIN Philips' objection and DENY Masimo's motion for summary judgment of non-infringement of the '535 patent.

##### b. Philips' '535 patent—infringement under the doctrine of equivalents

■ The SJ Report recommends that the Court hold that, with respect to infringement of Philips' '535 patent under the doctrine of equivalents, Philips cannot argue that [Redacted]. The SJ Report reached this conclusion based on three grounds: (i) claim vitiation; (ii) prosecution history estoppel; and (iii) the doctrine of disclosed but unclaimed subject matter. (D.I. 662 at 151–62) Philips' objection is OVERRULED as the Court agrees with the Magistrate Judge that all three of these are sufficient bases for holding that Masimo cannot be found to infringe the '535 patent pursuant to the doctrine of equivalents. The Court will GRANT Masimo's motion for summary judgment of non-infringement by equivalents of the '535 patent.

##### c. Masimo's '984 patent—infringement

The SJ Report recommended granting Philips' motion for summary judgment of

---

24. [Redacted]

non-infringement of ·all asserted claims of Masimo's '984 patent. [Redacted] As explained above, the Court has decided to deny Philips' motion for summary judgment of non-infringement of Masimo's '984 patent with regard to the basis the Magistrate Judge found warranted summary judgment for Philips on all asserted claims. Consequently, it has now become necessary to address Philips' alternative argument.

[Redacted][25] Masimo's point, however, is irrelevant; the language of claims 1 and 53 makes clear that the "processing module" is "configured to *utilize at least one* of the first and second calculators *to determine a resulting* value indicative of the at least one physiological characteristic." ('984 patent at 66:46–49 (emphasis added); *see also id.* at 70:16–19) Claims 15, 16, 53, and 54 do, indeed, impose the additional requirement "said utilization of said at least one of the first and second calculators is based at least in part on a property of the one or more intensity signals." (*See id.* at 67:23–25)[26] However, the location from which the information or property used by the processing module comes from—whether it be from the calculators or elsewhere—is of no consequence to the distinct requirement mandated by the plain language of all the claims that the processing module must be configured to utilize one of the calculators to determine a resulting value.

It follows that the Court must determine whether there is a genuine issue [Redacted]

Therefore, the Court OVERRULES Philips' objection and DENIES Philips' motion for summary judgment of non-infringement of the '984 patent.

### d. Masimo's '222 patent— anticipation by Hall

 Although Judge Thynge did not need to reach the issue of whether Masimo's '222 patent is invalid due to anticipation by Hall, given that she found this patent to be invalid due to lack of adequate written description (*see* D.I. 662 at 25–31), she nonetheless evaluated Philips' anticipation contention and concluded genuine disputes of material fact precluded granting Philips summary judgment of invalidity based on anticipation (*see id.* at 31–35). Having now denied summary judgment of invalidity based on written description, it is necessary for the Court to evaluate the SJ Report's conclusion with respect to anticipation. Having undertaken the required de novo review, the Court agrees with Judge Thynge that genuine disputes of material fact require denial of Philips' motion for summary judgment on anticipation.

For example, Dr. Baura testified that Hall discloses frequency-locked loop or bandpass tracking filters, which do not remove "erratic" noise as required by the '222 patent. (D.I. 514 ¶ 113; D.I. 421 Ex. 25 at 235–38) Dr. Baura also opined that Hall is directed only to predictable "motion artifact signals outside" of the range of frequencies corresponding to pulsating arterial blood, whereas erratic noise disclosed in Claim 17 is unpredictable, appearing at any frequency range. (D.I. 514 ¶ 15; '222 patent at 5:5–12, 2:51–60) A reasonable jury could accept Dr. Baura's opinion and thereby find an absence of clear and convincing evidence of invalidity by anticipation. Accordingly, the Court OVERRULES Philips' objection and DENIES Philips' motion for summary judg-

---

**25.** Neither Judge Thynge nor the Court has construed the term "utilizes at least one of the first and second calculators."

**26.** The plain language of claims 19 and 20 suggests they do not involve this limitation.

ment of invalidity of Masimo's '222 patent due to anticipation.

#### c. Masimo's '272 patent—infringement

The SJ Report states [Redacted] Applying de novo review, the Court SUSTAINS Philips' objection on this point and GRANTS Philips' motion for summary judgment of non-infringement of Masimo's '272 patent.

Based on Judge Thynge's recommendation, the Court construed "comparing" in independent claim 9 of the '272 patent as "calculating point-by-point comparisons of the first and second transformed signals." (D.I. 210 at 6; D.I. 319 at 2)[27] This was Philips' proposed construction, and it was based, at least in pan, on an embodiment in the specification and a statement in it that when a comparison is done it must be on a "frequency consistent, or point-by-point basis." (D.I. 210 at 7; *see also id.* at 7 n.20 (citing '272 patent at 56:56–58 ("The point-by-point ratio module takes the red over infrared ratio of the values on *a point-by-point basis.*") (emphasis added))) In this "Fast Fourier Transfer (FFT) complex" embodiment, the sample points are compared on a point-by-point basis—that is by a direct, one-to-one comparison. ('272 patent at 56:41–44 ("The magnitude modules perform a magnitude function wherein the magnitude on *a point-by-point basis of the complex FFT points is* selected for each of the respective channels."); *id.* at 56:47–50 ("The threshold modules *examine the sample points,* on a *point-by-point basis,* to select those points where the magnitude of an individual point is above a particular threshold"); *id.* at 56:55–58 ("[T]he *data points* are forwarded to a point-by-point ratio module, The point-by-point ratio module takes the red over infrared ratio of the values on *a point-by-point basis* ") (emphasis added))

[Redacted]

Masimo's arguments for a contrary conclusion—[Redacted]—are based on Dr. Baura's largely conclusory opinion and do not provide sufficient bases for a finding of infringement.[28]

### C. *Daubert* Motions
#### 1. The Parties' Objections

Magistrate Judge Thynge issued her *Daubert* Report (D.I. 704) on May 20, 2013. Both sides filed objections (D.I. 716, 717) and responses (D.I. 726, 727). Masimo objects to the recommendations to: (1) strike Dr. Quill's supplemental report. (2) strike Dr. Quill's opinion that lack of peer-reviewed studies supports the unacceptability of Nonin PureSat, and (3) exclude Mr. Wagner's testimony regarding Masimo's incremental profit margin. (*See* D.I. 717 at i) Philips objects to the recommendations to: (1) not permit Dr. Keeley to rely on the Nonin–Respironics agreement in the reasonable royalty analysis. (2) allow Mr. Wagner's opinion on the percentage of FAST sockets using Masimo, Nellcor, and Philips sensors. (3) admit Mr. Wagner's reasonable royalty rate opinion, and (4) permit Dr. Quill to testify regarding the lack of peer-reviewed studies of Nonin technology, (*See* D.I. 716 at i–ii)

#### 2. Legal Standards and Standard of Review

 Federal Rule of Evidence 702 requires that expert testimony be (1) based upon sufficient facts or data. (2) the product of reliable principles and methods, and (3) the reliable application of those principles and methods to the facts of the case. "Where there is a logical basis for

---

**27.** The Court adopted the same construction for the term "determining" as used in independent claim 14. (D.I. 210 at 8)

**28.** [Redacted]

an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge," *In re TMI Litig.*, 193 F.3d 613, 713 (3d Cir.1999) *amended*, 199 F.3d 158 (3d Cir.2000) (citation omitted). The weight and credibility of an expert's testimony may be challenged through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Proponents of expert evidence do not have to "demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994).

A *Daubert* motion to exclude testimony presents a non-dispositive matter, and objections to a Magistrate Judge's recommendation on a non-dispositive motion are subject to a "clearly erroneous and contrary to law" standard of review, pursuant to 28 U.S.C. 636(b)(1)(A) and Fed. R. Civ. P. 72(a). Under a "clearly erroneous" standard, the appellate court will only set aside factual findings when it is "left with the definite and firm conviction that a mistake has been committed." *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir.2007) (internal quotation marks omitted). Accordingly, it is "the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir.2009) (internal quotation marks omitted). A Magistrate Judge's order is contrary to

law "when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins., Co.*, 237 F.R.D. 545, 548 (D.N.J.2006); *see also Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F.Supp.2d 416, 424 (D.N.J. 2009) (stating "a magistrate judge's decision typically is entitled to deference" but "a magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo") (internal quotation marks omitted).

The Third Circuit has explained that on appeal it "afford[s] a district court's application and interpretation of Rule 702 plenary review," but "review[s] the [trial] court's decision to admit or reject testimony under an abuse of discretion standard." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 146 (3d Cir.2000) (internal citations omitted). A court "abuses its discretion" if "its decision rests upon a clearly erroneous finding of fact an errant conclusion of law, or the improper application of law to fact." *Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 322 (3d Cir.2012) An abuse of discretion can also occur when "no reasonable person would adopt the district court's view." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir.2000): *Oddi*, 234 F.3d at 146.

### 3. Plaintiff's Objections

#### a. Dr. Quill's Supplemental Report

The *Daubert* Report recommends granting Philips' motion to strike Dr. Quill's supplemental report relating to non-infringing alternatives based on the untimeliness of the report. The Court finds no clear error of law or fact and no abuse of discretion in Magistrate Judge Thynge's conclusion.

Masimo argues that "Dr. Quill's Supplemental Report was a direct response to Philips' new litigation theory" namely that Nonin PureSAT is "the ***exclusive*** alleged

available acceptable noninfringing alternative" (D.I. 717 at 2) (emphasis added), but it is undisputed that Masimo knew Philips contended Nonin PureSAT was *a* non-infringing alternative far before Philips narrowed its case and Masimo served the challenged report. Indeed, by June 2, 2011, well before Dr. Quill filed his opening expert report, Masimo had been informed by Philips that PureSAT was one of no more than eight allegedly non-infringing alternatives on which Philips, at most, would rely. (D.I. 704 at 26–27 (citing D.I. 601 Ex. 165 at 11–12); *see also* Tr. at 140) While Masimo faults Philips because "during discovery, Philips in no way alerted Masimo to its contention that Nonin Pure-SAT has any particular importance or to the way or extent to which Philips would ultimately rely on Nonin PureSAT" (D.I. 717 at 2), Masimo identifies no authority for the implicit premise that Philips had an obligation to so "alert" Masimo.

Accordingly, the Court OVERRULES Masimo's objection and GRANTS Philips' motion to strike Dr. Quill's supplemental expert report.

### b. Dr. Quill's opinion regarding lack of peer-reviewed studies

■ Masimo objects to the *Daubert* Report's conclusion that "Dr. Quill may testify there is lack of peer reviewed studies on Nonin PureSat showing that it is an acceptable alternative, but cannot opine or testify that Nonin PureSat is [an] unacceptable alternative *due to* the lack of such studies." (D.I. 704 at 24) (emphasis added) In other words, although Judge

Thynge recommends permitting Dr. Quill to testify that there exists a lack of peer reviewed studies, she also recommends that the Court strike Dr. Quill's opinion as to *the significance* of the absence of such studies. While the Court suspects it may have reached a contrary conclusion were this issue being reviewed de novo,[29] the Court finds no clear error of law or fact, nor any abuse of discretion, in the *Daubert* Report's recommendation. Hence, the Court OVERRULES Masimo's objection and GRANTS Philips' motion to strike this portion of Dr. Quill's testimony.

Nonetheless, the Court is concerned about whether, at trial, it can effectively walk the fine line drawn by today's ruling. It may be appropriate to reevaluate these issues in the context of a motion *in limine,* if either side chooses to file one in connection with preparation of the final pretrial order.

### c. Mr. Wagner's testimony regarding Masimo's incremental profit margin

■ Masimo contends that the *Daubert* Report clearly erred in finding, "Wagner was unfamiliar with the supporting documents and other details for his assumptions." (*Id.* at 60) (internal footnotes omitted) The Court agrees.

Mr. Wagner had Masimo prepare the incremental profit margin analysis based on his direction and to his specifications. (*See* D.I. 432 Ex. 30 at 223 (testimony by Wagner that he requested analysis based on sales assumptions from his damages

---

**29.** The underlying substantive issue relates to the "absence of *acceptable* noninfringing substitutes," *Panduit Corp. v. Stahlin Bros. Fibre Works. Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978), and it is undisputed that one factor one would consider in assessing acceptability is peer review, *see Boston Scientific Corp. v. Cordis Corp.,* 838 F.Supp.2d 259, 273 (D.Del. 2012) *aff'd,* 497 Fed.Appx. 69 (Fed.Cir.2013)

(considering studies as evidence under the second *Panduit* factor). Generally, lack of peer reviewed studies can be viewed as affirmative evidence that the technology at issue is not acceptable. The absence of such studies is one, but just one, of the facts on which Dr. Quill relied in reaching his conclusion of unacceptability. (D.I. 432 Ex. 31 at 22–23)

model); *id.* at 224–26 (explaining importance of Masimo personnel working on analysis, as they best understood their own sales structure and manpower requirements)) The Court finds that the *Daubert* Report clearly erred in finding that Mr. Wagner lacked "familiarity with the underlying data for his conclusions on profit margin." (D.I. 704 at 60) The Court does not agree that the situation here matched that confronted in *Chemipal Ltd. v. Slim–Fast Nutritional Foods Int'l, Inc.,* 350 F.Supp.2d 582, 592 (D.Del.2004), in which the expert's report relied entirely on a marketing plan not prepared by the expert, and the record demonstrated the expert did not "understand the methodology used to gather the information in the Grey 1997 Plan or the methodology used by those who performed the research for the secondary sources." Here, far from relying on a third party's independent analysis, Mr. Wagner legitimately relied on his staff and dictated the parameters of the analysis.

Accordingly, the Court SUSTAINS Masimo's objection and DENIES Philips' motion to strike Wagner's testimony regarding Masimo's incremental profit margin.

### 4. Defendants' Objections

#### a. Dr. Keeley's reliance on Nonin–Respironics agreement

■ The *Daubert* Report recommends finding that a 2001 agreement between Nonin and Respironics does not relate to technology comparable to the technology of the patents-in-suit and therefore, that Philips' expert, Dr. Keeley, should not be permitted to rely on it (D.I. 704 at 45; D.I. 726 at 2) This factual finding is not clearly erroneous. The agreement was executed years before PureSAT came along and it does not identify the technology to which it applies. (D.I. 392 Ex. J.) (discussing generally "products identified by Respironics and agreed to by Nonin") While, again, the

Court's conclusion might be different were this issue being reviewed de novo. Philips has failed to show that it is entitled to relief under the more deferential standard of review that applies. Accordingly, the Court OVERRULES Philips' objection and GRANTS Masimo's motion to exclude this portion of Dr. Keeley's testimony.

#### b. Wagner's opinion on percentages of FAST sockets using Masimo, Nellcor, and Philips sensors

■ Philips objects to the *Daubert* Report's finding that the testimony of Masimo's expert, Mr. Wagner, on the percentage of FAST sockets using Masimo, Nellcor, and Philips sensors is admissible. (*See* D.I. 704 at 47–49) Philips asserts several bases for its objection, but at no point does Philips even attempt to demonstrate how the *Daubert* Report committed clear error of law or fact or an abuse of discretion in this regard. Philips' argument that Wagner ignored evidence Philips insists is reliable (certain testimony by Messrs. Fishel and Heckendorn, which Wagner dismissed as being inaccurately based on their experience rather than "documentary information"), does not persuade the Court to sustain Philips' objection, given the applicable deferential standard of review. (D.I. 716 at 6; D.I. 704 at 49) Similarly unavailing is Philips' insistence that the spreadsheet on which Wagner relied has nothing to do with ongoing sensor usage (D.I. 716 at 6–7), as the Magistrate Judge did not clearly err in finding that Wagner "analyzed the only available record evidence" and made "fact-based assumptions extrapolated from other evidence to perform a reasonableness check of his figures." (D.I. 704 at 49) Additionally, the Court agrees with Judge Thynge that any failure by Philips to retain relevant documents should be held against Philips as the accused infringer.

(*Id.*; *see also Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1065 (Fed.Cir. 1983) ("[W]hen the amount of the damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the infringer.")) Thus, the Court OVERRULES Philips' objection and DENIES Philips' motion to exclude Wagner's opinion on percentage of FAST sockets.

### c. Wagner's reasonable royalty rate opinion

Philips' objection to the *Dauhert* Report's recommendation that [Redacted] *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir.2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."). [Redacted] she concluded that Wagner's use of the agreements was therefore sound under the *Georgia–Pacific* analysis. (*Id.*) (discussing *Georgia–Pac. Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1117 (SD.N.Y.1970)) Philips has not demonstrated that Judge Thynge clearly erred or abused her discretion.[30] Finally, the purported real-world problem Philips highlights—[Redacted] *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed.Cir.1995) ("[W]hat an infringer would prefer to pay is not the test for damages.").

The Court OVERRULES Philips' objection and DENIES Philips' motion to exclude Wagners reasonable royalty rate opinion.

---

**30.** Although Philips contends otherwise, [Redacted].

**31.** Philips also objects to the finding that Wagner's calculations of sensor percentages

### d. Dr. Quill's testimony regarding lack of peer-reviewed studies of Nonin technology

The Court already addressed the issue of Dr. Quill's testimony regarding the lack of peer-reviewed studies of Nonin technology and the *Daubert* Report's recommended limits on the significance of that fact. For the same reasons given in connection with Masimo's objection, the Court OVERRULES Philips' objection and DENIES Philips' motion to strike Dr. Quill's testimony.

### D. Damages Report
### 1. The Parties' Objections

Both sides have objected to Chief Magistrate Judge Thynge's Damages Report. (*See* D.I. 721, 733, 734, 744, 745) Specifically, Masimo objects to the recommendation that Philips' motion for summary judgment of no willful infringement be granted. Philips objects to the recommendation that the Court deny Philips' motion for summary judgment to preclude Masimo from recovering lost profits damages.[31]

### 2. Legal Standards and Standard of Review

The legal standards applicable to review of motions for summary judgment have already been stated above. As also explained above, the Court reviews the Magistrate Judge's recommended disposition of a case-dispositive motion de novo.

### 3. Willful Infringement

Masimo objects to the Damages Report as contrary to law because of its recommendation that Philips' motion for summary judgment of no willful infringement be granted. Masimo contends that

---

reasonably relied on applicable data, an issue that has already been addressed in this Opinion.

when the objective reasonableness prong of willfulness relates to factual issues, a court cannot grant summary judgment and must, instead, allow a trial on willfulness. (*See* D.I. 734 at 4–5 (citing *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates. Inc.*, 682 F.3d 1003, 1008 (Fed.Cir. 2012) *cert. denied*, —— U.S. ——, 133 S.Ct. 932, 184 L.Ed.2d 752 (2013)) The Court disagrees.

As the Damages Report correctly observes, "While a judge 'may' permit a jury to determine underlying facts when considering the first objective prong of *Seagate*, this approach is not mandatory." (D.I. 721 at 5); *see also id.* (" '[T]he ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge.' ") (quoting *Bard*, 682 F.3d at 1008; *see also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed.Cir.2011) ("Since *Seagate*, [the Federal Circuit] has required patentees to prove the objective prong of the willful infringement inquiry by clear and convincing evidence as a predicate to the jury's consideration of the subjective prong . . ."))

Masimo further argues that the Damages Report erred in its determination that Philips' defenses were reasonable. However, the Court agrees with Philips that Judge Thynge's "extensive history with th[is] case and her careful and thorough review of the parties' summary judgment briefs related to those [Philips] defenses, only underscores the fact that her recommendation regarding willfulness is correct." (D.I. 744 at 5 n.5) Indeed, Philips has asserted at least one objectively reasonable non-infringement or invalidity position with respect to each asserted claim of each patent, as evidenced in part by the fact the Magistrate Judge, this District Judge, and/or the U.S. Patent and Trademark Office ("PTO") were persuaded many of its positions had merit.[32]

Therefore, after reviewing the issue de novo review, the Court agrees with the Damages Report, OVERRULES Masimo's objection, and GRANTS Philips' motion for summary judgment of no willful infringement.

### 4. Lost Profits Damages

■ Finally, Philips objects to the Magistrate Judge's recommendation to deny its motion for summary judgment that Masimo is not entitled to lost profits damages. Philips' objection is OVERRULED and Philips' motion for summary judgment is DENIED.

To be entitled to the relief it seeks, Philips would have to show that the record contains insufficient evidence upon which a reasonable juror could find in favor of Masimo that there are no acceptable non-infringing substitutes for the patented technology. *See Panduit*, 575 F.2d at 1156. Philips has failed to do so. Instead, the Court concludes there is a genuine dispute of material fact as to whether No-

---

**32.** With respect to the '222 patent, the fact that the Magistrate Judge recommended that the Court grant summary judgment of invalidity demonstrates that this defense was at least reasonable; as for non-infringement. Judge Thynge's agreement with Philips' proposed construction of "signal processor" shows the reasonableness of Philips' position. As for the '984 patent, Philips' non-infringement and invalidity positions were not unreasonable, and its position on invalidity is further bol-

stered by the PTO's grant of Philips' request for reexamination. The reasonableness of Philips' non-infringement defense for the '272 patent is evidenced by the Court's decision to grant summary judgment of non-infringement. Finally, with regard to the '194 patent, the reasonableness of Philips' invalidity defense is plain from the Court's adoption of Judge Thynge's recommendation to grant summary judgment of invalidity.

nin Puresat is an available and acceptable non-infringing alternative. (*See* D.I. 432 ¶¶ 20–22, 54 (opining acceptability encompasses whether PureSAT can measure through motion); D.I. 704 at 23 (Dr. Quill "may testify as to what is acceptable to other medical professionals and hospitals"); *id.* at 24 ("Dr. Quill may testify there is lack of peer reviewed studies on Nonin PureSat showing that it is an acceptable alternative ...")) Additionally, the Kiani and Baker declarations demonstrate a factual issue, and any argument that these declarations were filed too late is itself untimely and waived. (*See* D.I. 494 at ¶ 6) [Redacted]

## V. CONCLUSION

An Order consistent with this Memorandum Opinion will be entered.

### *ORDER*

At Wilmington this **31st day** of **March, 2014**:

For the reasons stated in the Memorandum Opinion issued this same date, IT IS HEREBY ORDERED that:

1. The Court ADOPTS IN PART and REJECTS IN PART Chief Magistrate Judge Thynge's Summary Judgment Report and Recommendation issued on April 2, 2013 (D.I. 662), and specifically holds as follows:

a. Masimo's objection to the recommendation that summary judgment of invalidity of the '222 patent due to lack of written description be granted to Philips is SUSTAINED and Philips' motion for summary judgment of invalidity due to lack of written description (D.I. 410) is DENIED.

b. Masimo's objection to the recommendation that summary judgment of non-infringement of the '984 patent be granted to Philips is SUSTAINED and Philips' motion for summary judgment of non-infringement (D.I. 394) is DENIED.

c. Masimo's objection to the recommendation the Ukawa reference be considered prior art to the '984 patent is SUSTAINED. Masimo will be permitted to challenge the Ukawa reference's status as prior art to the '984 patent.

d. Masimo's objection to the recommendation that summary judgment of invalidity of the '194 patent due to lack of written description be granted to Philips is OVERRULED and Philips' motion for summary judgment of invalidity due to lack of written description (D.I. 406) is GRANTED.

e. Philips' objection to the recommendation that summary judgment of non infringement of the '535 patent be granted to Masimo with respect to literal infringement is SUSTAINED and Masimo's motion for non-infringement (D.I. 393) is DENIED with respect to literal infringement.

f. Philips' objection to the recommendation that it be barred from arguing that evaluation of only infrared spectral values falls within the doctrine of equivalents with respect to infringement of the '535 patent is OVERRULED and Masimo's motion for summary judgment of non-infringement of the '535 patent (D.I. 393) is GRANTED with respect to infringement under the doctrine of equivalents.

g. Philips' objection that claims 15, 16, 19, 20, 53, and 54 of the '984 patent are not infringed is OVERRULED and Philips' motion for summary judgment of non-infringement (D.I. 394) is DENIED.

h. Philips' objection to the recommendation that summary judgment of invalidity of the '222 patent due to anticipation be denied to Philips is OVERRULED and Philips' motion for summary judgment of invalidity due to anticipation (D.I. 410) is DENIED.

i. Philips' objection to the recommendation that summary judgment of non-infringement of the '272 patent be denied to Philips is SUSTAINED and Philips' motion for summary judgment of non-infringement (D.I. 402) is GRANTED.

2. The Court ADOPTS IN PART and REJECTS IN PART Chief Magistrate Judge Thynge's *Daubert* Report and Recommendation issued on May 20, 2013 (D.I. 704), and specifically holds as follows:

a. Masimo's objection to the recommendation to strike Dr. Quill's supplemental report relating to non-infringing alternatives is OVERRULED and Philips' motion to exclude (D.I. 420) is GRANTED with regard to this portion of the testimony.

b. Masimo's objection to the recommendation to strike Dr. Quill's opinion or testimony that the lack of peer reviewed studies on Nonin PureSat show Nonin PureSat is an unacceptable alternative is OVERRULED and Philips' motion to exclude (D.I. 420) is GRANTED with regard to this portion of the testimony.

c. Masimo's objection to the recommendation to strike Mr. Wagner's testimony regarding Masimo's incremental profit margin is SUSTAINED and Philips' motion to exclude (D.I. 422) is DENIED with regard to this portion of the testimony.

d Philips' objection to the recommendation to strike Dr. Keeley's testimony relying on Nonin–Respironics agreement is OVERRULED and Masimo's motion to exclude (D.I. 388) is GRANTED with regard to this portion of the testimony.

e. Philips' objection to the recommendation to admit Mr. Wagner's testimony on the percentage of FAST sockets using Masimo, Nellcor, and Philips sensors is OVERRULED and Philips' motion to strike (D.I. 422) is DENIED with regard to this portion of the testimony.

f. Philips' objection to the recommendation to admit Mr. Wagner's testimony regarding the reasonable royalty rate is OVERRULED and Philips' motion to strike (D.I. 422) is DENIED with regard to this portion of the testimony.

g. Philips' objection to the recommendation to admit Dr. Quill's opinion or testimony that there are no peer reviewed studies on Nonin PureSat showing Nonin PureSat is an acceptable alternative is OVERRULED and Philips' motion to exclude (D.I. 420) is DENIED with regard to this portion of the testimony.

3. The Court ADOPTS Chief Magistrate Judge Thynge's Damages Report and Recommendation issued on June 14, 2013 (D.I. 721), and specifically holds as follows:

a. Masimo's and Philips' objections are OVERRULED.

b. Philips' motion for summary judgment of no willful infringement (D.I. 426) is GRANTED.

c. Philips' motion for summary judgment of no lost profits damages (D.I. 424) is DENIED.

4. The Court ADOPTS all of Chief Magistrate Judge Thynge's Reports and Recommendations regarding Summary Judgment, *Daubert*, and Damages to the extent not objected to and to the extent any objections have been deemed waived for the reasons explained in the opinion.

5. Because the Memorandum Opinion today was filed under seal, the parties shall meet and confer and propose, no later than April 3, 2014, a proposed redacted version.

6. The parties shall meet and confer and, no later than ten (10) days after the date of this Order, submit a joint status report, advising the Court, among other

things, of their proposal(s) for how this matter should proceed.